IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT BUENTELLO, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | C.A. NO. C-06-239 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is an inmate in the Texas Department of Criminal Justice,
Criminal Institutions Division ("TDCJ-CID"), and currently is incarcerated at the
Alfred Hughes Unit in Gatesville, Texas.  Proceeding pro se, petitioner filed this
habeas corpus petition pursuant to 28 U.S.C. § 2254 to challenge his conviction by
a Texas state court for aggravated sexual assault of a child and indecency with a
child.  (D.E. 1).  Pending is respondent's motion for summary judgment for failure
to state a claim upon which habeas relief may be granted.  (D.E. 17).  For the
reasons stated herein, it is respectfully recommended that respondent's motion be
granted.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to
28 U.S.C. § 2254, which provides that jurisdiction is proper where the inmate is

confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d

959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 94th District Court of

Nueces County, Texas, and therefore, jurisdiction is proper in this Court.

## II.  BACKGROUND

**A.     Procedural Background.**

Respondent has lawful custody of petitioner pursuant to a judgment and

sentence of the 94th Judicial District Court of Nueces County, Texas, in cause

number 01-CR-3008-C(S1), styled The State of Texas v. Robert Buentello.  Ex

parte Buentello, App. No. 63,897-01 at 2.  In March 2003, a jury found petitioner

guilty of three counts of aggravated sexual assault of a child and one count of

indecency with a child.  Id.  After finding an enhancement allegation to be true,

Judge Jack E. Hunter sentenced him to twenty-five years for each of the three

counts of aggravated sexual assault, to run concurrently, as well as a fifteen-year

sentence for indecency with a child, which is to run consecutively to the twenty-

five-year sentences.  Buentello, 01-CR-3008-C(S1) at 1-2.

On August 27, 2004, the Thirteenth Court of Appeals of Texas affirmed his

conviction.  Buentello v. State, No. 13-03-255-CR, slip op. (Tex. App. 2004).  He

did not file a petition for discretionary review with the Texas Court of Criminal

Appeals.  On August 26, 2005, he filed an application for state writ of habeas

corpus, challenging his conviction.  <u>Ex parte Buentello</u>, App. No. 63,897-01.  The trial court recommended that relief be denied.  <u>Id.</u> at 117-18.  On May 24, 2006, the Texas Court of Criminal Appeals denied his application without written order and adopted the findings of the trial court.  <u>Id.</u> at cover.  On May 27, 2006, he filed this action.  (D.E. 1, at 9).  Respondent filed his motion for summary judgment on September 6, 2006.  (D.E. 17).

**B.      Factual Background.**

In June 2002, petitioner was indicted on seven counts related to the alleged sexual abuse of a minor, A.M.  <u>State of Texas v. Robert Buentello</u>, Clerk's Record, at 2-5.[1]  He was also charged with related counts involving minor J.M., but was only indicted on the counts involving A.M.  <u>Id.</u>  On September 11, 2001, A.M.'s grandmother contacted law enforcement after the child told her and the child's grandfather that she had been touched inappropriately by petitioner.  <u>Id.</u> at 84.

On September 12, 2001, A.M. was questioned by Kenna Bush at the Nueces County Children's Advocacy Center.  <u>Id.</u> at 78.  Ms. Bush determined that the results of the interview indicated that sexual abuse had occurred.  <u>Id.</u> Consequently, a Sexual Assault Nurse Examiner at Driscoll Children's Hospital

---

[1] The Clerk's Record will be designated as "C.R." with the page numbers following the designation.

3

examined A.M.  Id. at 101-19.  No physical indications of trauma were present.  Id.
A videotape was made of the interview with Ms. Bush, but the tape was not
proffered for admission at trial.

   At petitioner's trial, the prosecution presented the testimony of A.M., her
grandmother, her grandfather, and Ms. Bush in support of its case.  State of Texas
v. Buentello, Reporter's Record, volume 3 at 12, 41, 52, & 69.[2]  The state called
Teresa Garcia, a Child Protective Services ("CPS") worker, as a rebuttal witness.  4
R.R. 36.

The grandmother testified that while she was bathing A.M., the child
complained that she was hurting her.  3 R.R. 16.  She further stated that when she
questioned the child about why she was hurting, the child would not answer her.
Id. at 17.  She then asked her husband to speak with the child, and the child
admitted to him that her father had touched her inappropriately.  Id.  In a statement
to police prior to trial, the grandmother stated that she and her husband were both
present when A.M. indicated to them using a doll where she had been touched.
C.R. at 84.  Petitioner's defense attorney cross-examined the grandmother on this
point at trial.  3 R.R. 28-29.

_____

[2] The Reporter's Record will be designated as "R.R." with the volume number preceding
it and the page numbers following the designation.

The victim's grandfather testified that the victim told him "that she had been molested by her dad or something like that and that's all I remember." Id. at 42. He testified that she did not tell him where she had been touched, and that he called his wife after she told him because he was upset. Id. at 43. He had a history of health problems, and when questioned, admitted that he had a seizure the day before he testified at the trial. Id. at 44-45. Petitioner's defense attorney performed only a limited cross-examination of the grandfather, eliciting information regarding whether he knew what day it was, what time it was, and where he was. Id. at 46.

The state then called A.M. to testify. Id. Judge Hunter approached her and asked her questions regarding whether she knew the difference between a truth and a lie. Id. at 47-51. The prosecutor then attempted to elicit information from the child about the events. Id. at 56-66. However, the child "clammed up." Id. at 58. Judge Hunter, during a bench conference, warned the prosecutor against leading the child. Id. at 59. After a break, the child indicated that she had been touched, and where she had been touched. Id. at 63. Judge Hunter again left the bench and approached the witness in order to see where the child was pointing. Id. at 64. Defense counsel only briefly questioned the child, and did not ask her any questions regarding the alleged abuse. Id. at 67.

5

Ms. Bush testified that during a fifteen to twenty minute interview with A.M. on September 12, 2001, the child told her that her father had touched her, and indicated where she had been touched by pointing to the area on an anatomically correct doll.  Id. at 71-72.  Defense counsel cross-examined Ms. Bush as to her experience as a child advocate testifying in court and as to whether the child ever described the abuse in words.  Id. at 75.

The state called Teresa Garcia as a rebuttal witness.  4 R.R. 36.  She testified that petitioner was never going to get custody of his children because "he needed drug counseling, he needed anger management, he needed obviously individual counseling, and then the sexual perpetrator counseling."  Id. at 37.  She also indicated that A.M. and her brother had been placed with the grandparents by Judge Carl Lewis prior to the alleged assault.  Id. at 37-38.

The jury convicted petitioner of three counts of aggravated sexual assault of a child and one count of indecency with a child.  C.R. at 168-72.

### III.  PETITIONER'S ALLEGATIONS

Petitioner raises the following claims in his petition:

(1)  the trial court improperly admitted hearsay testimony, (D.E. 1, at 7);

(2)  the prosecution withheld exculpatory evidence, id.;

(3)  he was denied due process because of judicial misconduct, id.;

(4)  the prosecution knowingly introduced perjured testimony, id.; and

(5)  he received ineffective assistance of counsel at both the trial and appellate levels because:

(a)  trial counsel failed to subpoena a psychologist, Dr. Kittay, to testify at trial, id. at 10;

(b)  trial counsel failed to object to the admission of hearsay testimony, id.;

(c)  trial counsel failed to request a preliminary hearing regarding the testimony of two of the State's witnesses, id.;

(d)  trial counsel failed to introduce mental health records, id.;

(e)  trial counsel failed to adequately investigate petitioner's case, interview witnesses, and prepare impeachment evidence, id.;

(f)  appellate counsel submitted an unauthorized brief on his behalf and failed to raise the claims raised in his instant habeas petition, id. at 8.

## IV.  EXHAUSTION OF STATE COURT REMEDIES

A federal writ of habeas corpus from an inmate in state custody shall not be granted unless the inmate has exhausted his remedies at law in the state courts, or there is an absence of state court remedies or circumstances that render state remedies insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1).

Petitioner has presented most of the claims raised in the instant petition to the state courts.  (D.E. 1, at 3); Ex parte Buentello, App. No. 63,897-01, at 2-31. Respondent notes that petitioner did not present the same claims regarding ineffective assistance of counsel on state habeas review, and argues that such claims are now procedurally barred because petitioner cannot return to state court to file a second application for writ of habeas corpus.  (D.E. 17, at 11).

The Fifth Circuit has held that "courts are expected 'to exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or be reaching the merits of the petition forthwith.'" Horsley v. Johnson, 197 F.3d 134, 136 (5th Cir. 1999) (quoting Granberry v. Greer, 481 U.S. 129, 131 (1987)).  It further stated that "comity and judicial economy make it appropriate to insist on complete exhaustion where 'unresolved questions of fact or of state law might have an important bearing....'" Id. at 137 (quoting Granberry).  If there are no unresolved questions of fact or state law, and the state court would likely refuse to consider a petition because it would be abuse of the writ, then "there is no reason to insist on complete exhaustion." Id. Furthermore, "[i]t has long been accepted that when a state court disposes of unexhausted claims on purely procedural grounds, those claims become exhausted." Barrientes v. Johnson, 221 F.3d 741, 748 n.8 (5th Cir. 2000) (citing

8

Gray v. Netherland, 518 U.S. 152, 161 (1996)).

Petitioner has already pursued his state habeas application to the fullest extent possible.  Ex parte Buentello, App. No. 63,897-01, at cover.  Any successive petitions would likely be considered an abuse of the writ under Texas law.  See Tex. Code Crim. Proc. art. 11.07 § 4 (Vernon 2002).  In addition, the claims that he presents for the first time in his instant petition are substantially similar to the claims presented in his state application, and the state court has adopted factual findings regarding the issues petitioner has brought before this Court.  It is respectfully recommended that because petitioner's unexhausted habeas claims are likely now procedurally barred under Texas law, the merits of petitioner's habeas claims should be addressed by this Court.

## V.  STANDARD OF REVIEW

**A.      Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.**

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is applicable to habeas petitions filed after its effective date, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively

unreasonable." <u>Morrow v. Dretke</u>, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in

original) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)); <u>see</u> <u>also</u> <u>Riddle v.

Cockrell</u>, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure

that state-court convictions are given effect to the extent possible under law."  <u>Bell

v. Cone</u>, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  <u>Id.</u> at

694 (citing <u>Williams</u>, 529 U.S. at 404-05).  In <u>Bell</u>, it explained that:

> A federal court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts.  The court may grant relief under
> the "unreasonable application" clause if the state court
> correctly identifies the governing legal principles but
> unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state
> court's application of clearly established federal law is
> objectively unreasonable, and we stressed in *Williams*
> that an unreasonable application is different from an
> incorrect one.

<u>Id.</u> (citations omitted).

The Fifth Circuit has held that federal courts may not grant a writ of habeas

corpus merely on the finding of an error by a state court, but rather only where a

"state court arrives at a conclusion opposite to that reached by [the Supreme Court]

10

on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted). A federal habeas court is to review only a state court's decision, and not the written opinion explaining its decision. Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003). The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision is unreasonable. Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000). A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001). The focus of the "unreasonable application" test of § 2254(d) is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every

angle of evidence." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam).

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'" Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)); see also Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998). The presumption of correctness is accorded to adjudications made by a state court during review of a petitioner's state petition for habeas corpus relief. See Morrow, 367 F.3d at 315. The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair." Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)). The Fifth Circuit has stated that the presumption of correctness also applies to mixed questions of law and fact. Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact) (citations omitted). Findings of fact may be implied from conclusions of law. See Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.      Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and by drawing all reasonable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that summary judgment is not appropriate.  Matsushita

13

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fields v. City of S. Houston , 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot rest on the mere allegations of the pleadings to sustain his burden, but must set forth material controverted facts in the response to the motion for summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995); Celotex, 477 U.S. at 322-23.

## VI.  DISCUSSION

### A.    Application of the AEDPA's Deference.

The Texas courts have already considered and rejected all of petitioner's claims.  Ex parte Buentello, App. No. 63,897-01, at cover.  The claims that petitioner is pursuing in his instant petition were raised in his state habeas corpus application.  Id. at 2-31; (D.E. 1, at 3).  The State filed an Answer and the trial court entered its findings, conclusion, and recommendation that his claims be denied.  Ex parte Buentello, App. No. 63,897-01, at 127.  The state trial court found that the assertions contained in the State's answer were correct.  Id.  The Texas Court of Criminal Appeals denied his state habeas application without

14

written order based on the findings of the trial court.  Id. at cover.  This denial of

petitioner's application and its specific reference to the findings of the trial court is

not silent or ambiguous.  It is a decision on the merits and is entitled to the

AEDPA's deference.  28 U.S.C. § 2254(d); see also Neal v. Puckett, 239 F.3d 683,

686 (5th Cir. 2001) (in the context of federal habeas proceedings, "adjudication 'on

the merits' is a term of art that refers to whether a court's disposition of the case

was substantive"); Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)

(holding a "denial" signifies an adjudication on the merits).

Thus, deference to the state court decision is mandated by § 2254(d).  See

Morrow, 367 F.3d at 313.  Petitioner is not entitled to federal habeas relief unless

he can demonstrate that the state court's adjudication of his claims was "contrary

to, or involved an unreasonable application, of clearly established federal law" or

was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).

**B.     Petitioner's Claim of Improper Admission of Child Hearsay Testimony.**

**1.     Admission of Child Hearsay Testimony Standard of Review.**

A criminal defendant has the right "to be confronted with the witnesses

against him."  U.S. Const. amend. VI.  A court's "admission of hearsay evidence

against a defendant implicates the Sixth Amendments's Confrontation Clause

because the defendant is not afforded an opportunity to confront the out-of-court

15

declarant." <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir.) (citing <u>Ohio v.</u>

<u>Roberts</u>, 448 U.S. 56, 63 (1980)), <u>cert.</u> <u>denied</u> 126 S. Ct. 51 (2005).[3]  The Supreme

Court has held that "a hearsay statement against a defendant may be introduced if

the statement bears sufficient 'indicia of reliability.'" <u>Id.</u> (quoting <u>Ohio v. Roberts</u>,

448 U.S. at 66).  In order to show indicia of reliability, it must be shown that the

statement either "falls within a 'firmly rooted' hearsay exception," or that the

statement "is supported by 'particularized guarantees of trustworthiness.'" <u>Id.</u>

(quoting <u>Idaho v. Wright</u>, 497 U.S. 805, 815-17 (1990)).  While the Fifth Circuit

has not determined whether the AEDPA's deference applies to the standard of

review for decisions involving the Texas' child hearsay statute or similar state

laws, it has reviewed <u>de</u> <u>novo</u> a state court's findings of harmless error.  <u>See</u>

<u>Lowery v. Collins</u>, 988 F.2d 1364, 1371-72 (5th Cir. 1993) (finding that <u>de</u> <u>novo</u> is

the proper standard of review for the question of whether a state court has properly

applied the harmless error standard articulated in <u>Chapman v. California</u>, 386 U.S.

18, 20-21 (1967) (holding that if there is constitutional error, harmlessness of

constitutional error is federal question)).  It found that whether harmless error

---

[3] Although <u>Ohio v. Roberts</u> was partially overruled by <u>Crawford v. Washington</u>, 541 U.S.
36 (2004), it still applies because petitioner was sentenced in 2003, and <u>Crawford</u> does not apply
retroactively.  <u>See</u>, <u>e.g.</u>, <u>In re Brown</u>, 457 F.3d 392, 395 (5th Cir. 2006); <u>Lave v. Dretke</u>, 444
F.3d 333, 334-36 (5th Cir.), <u>petition</u> <u>for</u> <u>cert.</u> <u>filed</u>, __ U.S.L.W. __ (U.S. June 13, 2006) (No. 05-
11552).

occurred is a mixed question of law and fact reviewable <u>de</u> <u>novo</u>.  <u>Id.</u> at 1372.[4]

### a.    Texas' Outcry Witness Statute.

Texas law provides an exception to the general rule that hearsay statements are inadmissible for hearsay statements made by a child abuse victim who either testifies, or is available to testify, at a hearing conducted outside the presence of the jury, or in any other manner provided by law.  Tex. Fam. Code § 54.031 (Vernon 2002).  The statute applies if the child was the victim of a Penal Code violation relating to sexual conduct.  <u>Id.</u>  It applies only to statements made by the alleged victim, and that were made to the first person to whom the child made a statement about the violation.  <u>Id.</u>

Noting that "[a] majority of states have enacted similar hearsay exceptions for a child's out of court statement about sexual abuse," the Texas Supreme Court has held that the "Texas statute strikes a balance 'between the necessity of introducing the child's statements through an adult witness and the necessity of avoiding the dangers implicit in hearsay itself.'"  <u>In re Z.L.B.</u>, 102 S.W.3d 120, 121-22 (Tex. 2003) (citations omitted).  It further held that the outcry statement "'must be more than words which give a general allusion that something in the area

---

[4] Siginnficantly, the Sixth Circuit has applied the AEDPA's deference to state court rulings to a state court decision that found that the admission of child hearsay statements did not violate the Confrontation Clause, and therefore petitioner was not entitled to <u>de</u> <u>novo</u> review.  <u>Stuart v. Wilson</u>, 442 F.3d 506, 514-15 (6th Cir.), <u>cert. denied</u> 126 S. Ct. 445 (2006).

of child abuse was going on.'" Id. at 122 (quoting Garcia v. State, 792 S.W.2d 88,

91 (Tex. Crim. App. 1990)).  Moreover, Texas courts allow the admission of

"outcry statements" even if the statement is not the first statement, or "general

allusion," that the child made, but instead a later, more specific statement, that the

child made to another individual.  See id.; see also Garcia, 792 S.W.2d at 91.

### b.    Supreme Court's Factors for Child Hearsay Statements.

In Idaho v. Wright, the Supreme Court, in holding that a child victim's

hearsay statements violated a defendant's Confrontation Clause rights because they

lacked particularized guarantees of trustworthiness, set out factors for courts to use

in such cases.  It addressed Idaho's "residual hearsay exception," which allowed

for the admission of hearsay statements not covered by another exception that had

"equivalent circumstantial guarantees of trustworthiness." Id. at 811-12.  Pursuant

to Idaho statute, a state court allowed the admission of statements made by a child

to her pediatrician regarding abuse.  Id. at 811.  However, in that case, the

statements were made in response to leading questions, there was no videotape of

the interview, and detailed notes of the interview were not kept.  Id. at 811-13.

The Supreme Court noted that "[o]ut-of-court statements made by children

regarding sexual abuse arise in a wide variety of circumstances, and we do not

believe the Constitution imposes a fixed set of procedural prerequisites to the

18

admission of such statements at trial." Id. at 818.  It further explained that

"'particularized guarantees of trustworthiness' must be shown from the totality of

the circumstances," and that "relevant circumstances include only those that

surround the making of the statement and that render the declarant particularly

worthy of belief." Id. at 819.  The Court concluded that "if the declarant's

truthfulness is so clear from the surrounding circumstances that the test of cross-

examination would be of marginal utility, then the hearsay rule does not bar

admission of the statement at trial." Id. at 820.

     The following factors are among those relevant for determining whether

hearsay statements by an alleged child victim in a sexual abuse case are reliable:

(1) spontaneity; (2) consistent repetition; (3) mental state of the declarant; (4) use

of terminology unexpected of a child of similar age; and (5) lack of motive to

fabricate.  Id. at 821-22 (citations omitted).  The above factors are "not exclusive,

and courts have considerable leeway in their consideration of appropriate factors."

Id.

     The Fifth Circuit has applied the Supreme Court's decision in Idaho v.

Wright in Lowery v. Collins, 988 F.2d 1364 (5th Cir. 1993).  In Lowery, it vacated

a petitioner's conviction for aggravated sexual assault of a child.  988 F.2d at 1366.

It found that the introduction of a videotaped interview of a child regarding sexual

abuse violated the petitioner's confrontation clause rights because it lacked the required "particularized guarantees of trustworthiness."  Id. at 1371.  The Fifth Circuit expressed that it was not deciding whether the videotape would have been admissible if the child had testified, but only under the circumstances of the case, in which the child was not called to testify, even though it found him competent to testify.  Id. at 1370.

c.    **The Fifth Circuit's Rulings on Child Hearsay Statements.**

The Fifth Circuit has not specifically addressed the constitutionality of the Texas "outcry witness" statute.  It has, however, addressed the propriety of other types of hearsay statements involving children who are alleged victims of sexual abuse.  Specifically, it has held that the admission of a police report regarding the videotaped statement of a child sexual abuse victim does not violate a defendant's federal constitutional right to confront witnesses against him when the child witness testified at trial, and was cross-examined by the defendant's attorney. Story v. Collins, 920 F.2d 1247, 1255 (5th Cir. 1991) (citing California v. Green, 399 U.S. 149, 158 (1970)).

However, the Fifth Circuit has also held that the admission of a videotaped interview of a child accuser violated a defendant's confrontation rights, notwithstanding the fact that the defendant might call the child as a witness for the

20

purpose of cross-examination.  <u>Offor v. Scott</u>, 72 F.3d 30, 33 (5th Cir. 1995)

(citing <u>Lowery v. Collins</u>, 996 F.2d 770 (5th Cir. 1993)).  A defendant may not be

forced to be the one to call the child witness.  <u>See</u> <u>id.</u>  In <u>Lowery</u>, the Fifth Circuit

noted that a defendant may waive his right to cross-examine a child witness, but

that the Sixth Amendment is only "complied with when the *prosecution* calls the

witness first, and *then* the defendant, for tactical or other reasons, voluntarily limits

or chooses to forego cross-examination."  996 F.2d at 771-72 (emphases in

original) (citations omitted).[5]

## 2.    Petitioner's Improper Admission Claims.

In order for the alleged child victim's hearsay statements to be

constitutionally permissible, they must either fall within a firmly rooted hearsay

exception or bear "adequate indicia of reliability."  <u>Idaho v. Wright</u>, 497 U.S. at

---

[5] The Tenth Circuit has held that a Kansas statute, which was similar to the Texas outcry witness law, that permitted the admission of child hearsay statements in criminal proceedings did not violate a defendant's constitutional right to confrontation.  <u>Myatt v. Hannigan</u>, 910 F.2d 680, 683 (10th Cir. 1990).  In <u>Myatt</u>, the child did not testify at the trial pursuant to a stipulation by both the prosecution and the defense.  <u>Id.</u> at 682.  In holding that the hearsay testimony was permissible, the court reasoned that "the right of confrontation in the Sixth Amendment has never been regarded as absolute.  It has long been recognized that in certain cases the right must give way to competing interests in the criminal trial process."  <u>Id.</u> (citing <u>Mattox v. United States</u>, 156 U.S. 237, 243 (1895)).  Considering the record as a whole, the court concluded that "there were 'adequate indicia of reliability' and sufficient 'particularized guarantees of trustworthiness' to satisfy the Sixth Amendment requirements for introduction of such evidence."  <u>Id.</u> at 685 (citing <u>Ohio v. Roberts</u>).  In addressing Washington state's child sexual abuse hearsay exception, the Ninth Circuit held that the state had the burden to demonstrate that the statements were reliable by showing "particularized guarantees of trustworthiness."  <u>Swan v. Peterson</u>, 6 F.3d 1373, 1379-80 (9th Cir. 1993).

817.  The State does not assert that the victim's statements fall within any firmly rooted hearsay exception, but rather that they are permissible pursuant to Texas' outcry witness statute.  Therefore, the statements must be supported by "particularized guarantees of trustworthiness."  Id.  In addition, to further support a finding that the statements were trustworthy, the record should reflect that the petitioner was provided an opportunity for full and effective cross-examination. Story, 920 F.2d at 1255.  This Court must review the records before it to determine whether petitioner's confrontation clause rights were violated by the admission of hearsay statements, and if so, whether such violation resulted in harmless error. See Offor, 72 F.3d at 33.

### a.  Testimony of the Grandmother.

The victim's grandmother testified at trial that, while she was bathing A.M., the child complained that she was hurting her.  3 R.R. 16.  She then testified that she had her husband talk to the child because she would not answer questions about why she was hurting.  Id. at 17.  This testimony conflicted with her earlier statement to police, in which she had indicated that the child had talked to both her and her husband about the abuse.  C.R. at 84.  Petitioner's attorney cross-examined the grandmother regarding this inconsistency.  3 R.R. 28-29.

Petitioner argues that the grandmother's testimony should have been

22

inadmissible testimony, or admissible only as the "first" outcry witness. (D.E. 1, at

10). At trial, she did not testify to the specific acts of abuse, and did not even state

that the child told her that petitioner was the one who had caused her to "hurt."

She testified to the following sequence of events:

> Q. Back in September of 2001, can you tell us how you
> first learned about this, what were you doing with
> [A.M.]?
> A. I was bathing her.
> Q. Whose home?
> A. Mine.
> Q. Is that in Nueces County, Texas, your home?
> A. Yes.
> Q. What did she say to you?
> A. She started complaining not to use the washcloth
> cause it was hurting her.
> Q. What part of the body was she referring to?
> A. Her private part.
> Q. Well, what did you think and what did you do when
> she said this?
> A. I just – I just didn't really want to think wrong but I
> started asking her questions and she wouldn't answer me
> so that's when I went to my husband and told him to talk
> to her.
> Q. What kind of questions did you ask her that she did
> not answer?
> A. That what was wrong, why was she hurting, and she
> wouldn't answer me.
> Q. Why did you ask your husband to talk with her then?
> A. Because she talks to him more, they're – they're more
> close.
> Q. And did she talk to him?
> A. Yes.
> Q. Were you present at that time?
> A. No.

> Q. How long did they talk by themselves?
> A. A few minutes.
> Q. What happened after that point in time?
> A. He called me and he – and when I went to the room
> he was crying and he told me what she had told him, that
> she had been molested.
> Q. Did she say by whom?
> A. Yes, ma'am.
> Q. Who is that?
> A. Bobby.
> Q. Is that Robert Buentello?
> A. (Nods head.)
> Q. Is that the name they use for their dad, Bobby?
> A. Yes, yes, ma'am.

3 R.R. 16-17.  Petitioner's trial counsel did not object to the admission of any of

the above testimony, and stated in an affidavit that he did not do so because he

believed it was permissible under Texas law.  Ex parte Buentello, App. No.

63,897-01, State's Answer, Ex. B.

   The Texas Court of Criminal Appeals has held that in order to be admitted as

an "outcry statement," it "must be one that 'in some discernible manner describes

the alleged offense,'" and not just a "'general allusion.'"  In re Z.L.B., 102 S.W.3d

at 122 (quoting Garcia, 792 S.W.2d at 91).  This Court must not review the state

court's application of its own laws, but must only determine whether the state

court's decision was contrary to, or an unreasonable application of federal law.

See Morrow, 367 F.3d at 313.

   Respondent does not allege that A.M.'s statements to her grandmother fall

24

within a firmly rooted hearsay exception, but only argues that the admission of

outcry statements is not constitutionally impermissible so long as the child is

available for cross-examination regarding the statements.  (D.E. 17, at 4).  Defense

counsel did have a chance to cross-examine A.M. about these matters.

Nonetheless, because the cross-examination of A.M. was quite limited, and her

responses at the trial during both direct and cross-examination were both forced

and cursory, it is respectfully recommended that this Court must also address

whether the child's statements had sufficient "particularized guarantees of

trustworthiness."

Particularized guarantees of trustworthiness must be shown from the

"totality of the circumstances," the relevant circumstances being those that

"surround the making of the statement and that render the declarant particularly

worthy of belief."  Idaho v. Wright, 497 U.S. at 819.  Among the factors the

Supreme Court has stated are useful for determining whether a child's statements

are trustworthy are spontaneity and lack of motive to fabricate.  Id. at 822.  The

grandmother described the circumstances surrounding the child making the

statements as a part of a day-to-day routine.  She was bathing the child, who

spontaneously declared that she did not want to be touched because she was

hurting.  3 R.R. 16.  A four-year old child is not likely to have motive to fabricate

25

such a statement during a routine bath time. From the totality of the circumstances, it appears that the child's statements were sufficiently trustworthy so as not to violate petitioner's right to confront witnesses against him. His counsel had ample opportunity to cross-examine the grandmother regarding the exact nature of the statements made to her by the child. In addition, he could have cross-examined A.M. regarding the statements, but nevertheless chose not to do so.

As for the hearsay statements regarding what the grandfather told the grandmother that A.M. had reported to him about the abuse, both grandparents were available for cross-examination about the exchange. Furthermore, counsel did not object to the statements. In any event, petitioner seems only to be complaining of the use of the grandmother's testimony as an additional outcry witness, and not of the admission of the grandfather's statements through the grandmother.

It is respectfully recommended that A.M.'s statements to her grandmother meet the test set out by the Supreme Court in Idaho v. Wright for the admission of such statements and have particularized guarantees of trustworthiness. Therefore, it is respectfully recommended that petitioner's claim that hearsay testimony was improperly admitted through the grandmother is without merit.

### b.  Testimony of the Grandfather.

The grandfather could not testify to anything specific that A.M. told him.  3 R.R. 42.  He had suffered a seizure the day before he testified, and could not testify to anything specific.  Id. at 44-45.  In fact, as petitioner's trial counsel stated, "[the grandfather's] testimony was not particularly effective for the state's case."  Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. B.  Texas law allows for the admission of outcry witness testimony not made to the first person the child told if to the first person the child gives only a "general allusion" of the events.  Garcia, 792 S.W.2d at 91.  From the record, it is not at all clear what A.M. told her grandfather about the alleged abuse.  It is not for this Court to determine whether he was a proper outcry witness, but only whether the hearsay statements admitted through him lacked particularized guarantees of trustworthiness.  See Idaho v. Wright, 497 U.S. at 819.

A.M. was available for cross-examination regarding the statements she made to her grandfather.  In addition, there is no indication that any of the factors the Supreme Court listed in Idaho v. Wright were lacking.  There is no indication that A.M.'s statements lacked spontaneity, that they were inconsistent, or that she had any motive to fabricate.  If anything, the child's telling her grandmother and grandfather the same facts on the same evening only lends support to the notion

27

that her statements were unprompted and consistent.

It is respectfully recommended that petitioner has failed to allege any facts regarding the grandfather's testimony which could entitle him to habeas relief.

### c.  Testimony of Kenna Bush.

As the multitude of cases addressing the admission of hearsay statements made by victims of abuse to police, physicians, teachers, social workers, and other child advocates suggests, a fact-intensive analysis of the totality of the circumstances surrounding statements made to such persons is necessary.  See Idaho v. Wright, 497 U.S. at 820.  Kenna Bush, who was employed at the Nueces County Children's Advocacy Center, has testified in over twenty trials involving children.  3  R.R. 74-75.  During her time with the Child Advocacy Center, she has interviewed approximately 900 children.  Id. at 69.

Ms. Bush testified that on September 12, 2001, she interviewed A.M. in a "child-friendly environment" in a house with "sofas and chairs and toys and playhouses."  Id. at 70.[6]  She questioned A.M. for fifteen minutes using "open-ended questions."  Id. at 71, 73.  She testified that A.M. told her that she had been

---

[6] During the punishment phase of the trial, the state explained that although the interview was videotaped, it did not seek admission of the videotaped interview because of concerns about the admissibility of the tape for purposes of appeal.  6 R.R. 31-34.  Nevertheless, the careful recording of the interview lends credibility.  Cf. Idaho v. Wright, 497 U.S. at 811-13 (finding that lack of detailed notes or videotape of interview of child, along with leading questions, contributed to hearsay statements lacking particularized guarantees of trustworthiness).

touched by her father, and indicated on an anatomically correct doll where she had been touched.  <u>Id.</u> at 72.  Petitioner's counsel cross-examined Ms. Bush regarding her experience at the Child Advocacy Center and the exact words used by A.M. to describe the abuse.  <u>Id.</u> at 74-75.

It is not for this Court to determine whether the trial judge correctly admitted the testimony of Ms. Bush under the Texas outcry witness statute, but only whether his doing so violated petitioner's right to confront witnesses against him.  Instead, this Court must address several factors to determine whether the hearsay statements testified to by Ms. Bush have the requisite "particularized guarantees of trustworthiness."  <u>See</u> <u>Idaho v. Wright</u>, 497 U.S. at 821-22.

During the interview, Ms. Bush asked the child why she did not like to stay with her father, to which she answered, "[b]ecause he touches me all the time."  6 R.R. 39.  This statement was made spontaneously, and not in response to a leading question.

A.M. consistently and repetitively described the same occurrence of events to her grandparents, Ms. Bush, and the jury.  There is no indication, nor does petitioner allege, that there was any defect in her mental state.  All reports indicate that she was a playful, interactive child, and a "good historian."  C.R. at 78, 101-19.  Petitioner alleges that the child was told to make up the story about abuse by

29

her grandparents in order to get government aid.  (D.E. 1, at 11).  However, the record indicates that A.M. was already living with her grandparents, who were legally entitled to receive benefits, long before the allegations of sexual abuse arose.  4 R.R. 48-49.  Moreover, he presented the allegations of fabrication at trial, and his attorney cross-examined the grandmother regarding welfare benefits.  Id. at 22-23.  He also called a witness who testified that the child had been told by her grandparents to make up the story about the abuse.  Id. at 5-7.  Finally, the child was available for cross-examination regarding motive or intent to fabricate when she was called as a prosecution witness.  Defense counsel chose not to ask the child any questions about the abuse testimony.  It is not the duty of this Court to re-weigh the evidence presented at the trial.

During the interview with Ms. Bush, A.M. used terminology and language that a child her age would generally not know.  6 R.R. 39-46.  She described the events with details that would not normally be known to a five-year-old child.  See id.

In addition to the hearsay statements testified to by Ms. Bush meeting the factors the Supreme Court set out in Idaho v. Wright, A.M. was available for cross-examination at trial.  See Story, 920 F.2d at 1255 (holding that the admission of hearsay was permissible where the child declarant was available for cross-

30

examination).  The trial judge found her to be a competent witness and allowed her testimony.  The record does not reflect any reason why petitioner's trial counsel could not have cross-examined the child regarding the interview, only that he may have strategically chosen not to because of the appearance of such questioning to the jury.

It is respectfully recommended that the hearsay statements testified to by Ms. Bush had the requisite "particularized guarantees of trustworthiness," and that A.M. was available for cross-examination regarding the statements.  Therefore, it is respectfully recommended that petitioner has failed to state a claim for habeas relief regarding the hearsay statements attested to by Ms. Bush.

## C.    Petitioner's Claim that State Withheld Exculpatory Evidence.

Petitioner claims that the state withheld exculpatory evidence.  (D.E. 1, at 7).  He argues that pending cases or prior convictions of the grandfather should have been used for the purpose of impeachment.  Id.  He also argues that the officers who recorded the initial statements regarding the alleged abuse should have been compelled to testify, and that by not compelling this testimony, the state withheld "concealed statements which showed manner and means of manipulation."  Id.

1.      **Standard of Review Pursuant to <u>Brady v. Maryland</u>.**

In <u>Brady v. Maryland</u>, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  373 U.S. 83, 87 (1963).  The prosecution "need not disgorge *every* piece of evidence in its possession ... [but] has an affirmative duty to disclose to the defense evidence that is favorable to the accused and material to guilty."  <u>Rector v. Johnson</u>, 120 F.3d 551, 558 (5th Cir. 1997) (citing <u>United States v. Bagley</u>, 473 U.S. 667, 674 (1985)) (emphasis in original).  <u>Brady</u> applies to both impeachment and exculpatory evidence.  <u>Hudson v. Whitley</u>, 979 F.2d 1058, 1066 (5th Cir. 1992) (per curiam) (citing <u>Bagley</u>, 473 U.S. at 676).

In addressing a <u>Brady</u> claim, the Fifth Circuit has explained that:

> A defendant must prove the following to establish a <u>Brady</u> violation: (1) the prosecution suppressed evidence, (2) the suppressed evidence was favorable to the defense and (3) the suppressed evidence was material to the defense.  The test for materiality is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  A reviewing court may consider any adverse effects the prosecutor's failure to release information might have had on the defendant's preparation and presentation of the case.

<u>Derden v. McNeel</u>, 938 F.2d 605, 617 (5th Cir. 1991) (citations omitted).  The

Fifth Circuit also requires that petitioner show that "discovery of the allegedly favorable evidence was not the result of a lack of due diligence."  Rector, 120 F.3d at 558 (citations omitted).  The state does not have a duty to disclose information that is available from other sources.  Id. at 559 (citation omitted).  In order to obtain relief on a Brady claim, petitioner must "demonstrate a reasonable probability that, but for the error, 'the result of the proceeding would have been different.'"  Barrientes, 221 F.3d at 756 (citation omitted) (Brady claims are reviewed using the "reasonable probability" standard).

### 2.     Petitioner Fails to Establish Any Brady Claims.

First, petitioner claims that the state failed to disclose pending cases against the grandfather.  (D.E. 1, at 7).  On state habeas review, the Texas Court of Criminal Appeals adopted the findings of the trial court.  Ex parte Buentello, App. No. 63,897-01, at cover.  The state trial court adopted the state's assertions.  Id. at 127.  Among the facts adopted by the state trial court was the affidavit of the assistant district attorney who tried the case.  Id. at State's Answer, Ex. D.  The assistant district attorney stated:

> I did not withhold exculpatory evidence.  Specifically, I did not withhold impeachable evidence regarding [the grandfather's] criminal history.  [He] did not have any pending felony cases.  Information about his misdemeanor theft conviction and the pending misdemeanor theft case, was revealed to [defense

33

counsel] before trial.

Id.  Furthermore, petitioner's trial counsel swore that "while I had [the grandfather's] criminal record available, which I could have used to impeach him, I elected not to do so given his favorable testimony."  Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. B.

The state court's findings are entitled to a presumption of correctness.  See Valdez, 274 F.3d at 948 n.11.  Petitioner has not presented any facts to support his claim that the prosecution withheld any evidence favorable to his defense, and has not presented any facts to overcome the presumption of correctness to which the state court's findings are entitled.

Second, petitioner claims that the state should have compelled the testimony of "detectives that made 'original-reports' from [the grandmother] and [A.M.]." (D.E. 1, at 7).  He argues that by not doing so, the prosecutor concealed exculpatory statements.  Id.  The assistant district attorney indicated that the officers were available to be called as witnesses.  Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. D.  She decided against calling them to testify because their testimony would have been objectionable as hearsay.  Id.

Petitioner has failed to present anything more than a conclusory allegation that the prosecution deliberately withheld exculpatory statements made to the

34

officers.  Nothing in the record supports his assertions that the prosecutor withheld any statements.  See Miller v. Johnson, 200 F.3d 274, 286 (5th Cir. 2000); see also Ross v. Estelle, 694 F.2d 1008, 1011 (5th Cir. 1983) (per curiam) (stating that "a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").  Moreover, petitioner has failed to present any reason that this Court should not defer to the state court's findings on this claim and presume the factual findings of the state court to be correct.

It is respectfully recommended that petitioner has failed to establish a Brady violation and his claims on these grounds are without merit.

**D.    Petitioner's Claim of Judicial Misconduct.**

Petitioner claims that the trial judge "acted as part of prosecution team" by leaving the bench and questioning the child witness during his trial.  (D.E. 1, at 7).

**1.    Standard of Review for Judicial Misconduct.**

Texas has a longstanding tradition of allowing a trial judge to determine if a child witness is competent to testify.  See, e.g., Scroggins v. State, 51 S.W. 232, 233 (Tex. Crim. App. 1899) (showing a similar examination to the one in the instant case); Woods v. State, 14 S.W.3d 445, 451 (Tex. App. 2000).  In particular,

the Texas Rules of Evidence require such examination by the court to determine

competency.  See Tex. R. Evid. 601(a)(2).

The Fifth Circuit reviews the entire record and the "totality of the

circumstances" when reviewing a claim that the trial court appeared biased.  United

States v. Sanchez, 325 F.3d 600, 603 (5th Cir. 2003) (citing United States v. Saenz,

134 F.3d 697, 702 (5th Cir. 1998)).  The question is "'whether the judge's behavior

was so prejudicial that it denied the defendant a fair, as opposed to a perfect,

trial.'"  Id.  The judge's conduct must not "amount to a 'quantitatively and

qualitatively' substantial intervention that could have led the jury to 'a

predisposition of guilt by improperly confusing the functions of judge and

prosecutor.'"  Id.; accord United States v. Bermea, 30 F.3d 1539, 1569 (5th Cir.

1994) (citations omitted).  So long as one does not appear biased in favor of the

prosecution, the Fifth Circuit allows federal district judges to "comment on the

evidence, question witnesses, bring out facts not yet adduced and maintain pace of

trial."  United States v. Wallace, 32 F.3d 921, 928 (5th Cir. 1994) (citations

omitted).

## 2. Petitioner Fails to Establish Trial Judge Acted Improperly.

Petitioner complains that Judge Hunter acted improperly during his

competency examination of A.M.:

THE COURT:  I thought I would come down here.  Have you ever been in the courtroom before?

THE WITNESS:  (Nods head.)

THE COURT:  You have?  Can you – can you talk to these people over here?  Can you tell us your name?

THE WITNESS:  (Nods head.)

THE COURT:  What's your full name?

THE WITNESS:  [A.M.]

THE COURT:  How old are you?

THE WITNESS:  Five years old.

THE COURT:  You go to school?

THE WITNESS:  Not yet.

THE COURT:  You don't go to school, not yet?

THE WITNESS:  (Shakes head.)

THE COURT:  What do you do all day, play?  Can you – can you answer?  Can you talk to me?  I want to ask you some questions, okay?  A few.

You know what telling the truth is, between telling the truth and telling a lie, telling a fib?  You know what telling the truth is?  You know if – sometimes let's say if you – if you – if you're at grandma's house and you may take a cookie and she catches you, have you ever done that?

THE WITNESS:  (Shakes head.)

THE COURT:  But if you told her you didn't and you did, would that be a fib?  Would that be a lie?  You don't know?

THE WITNESS:  (Shakes head.)

THE COURT:  You know – do you know what we're doing here today?

THE WITNESS:  (Shakes head.)

THE COURT:  Can you – are you getting a little shy?

THE WITNESS:  (Shakes head.)

THE COURT:  Can you talk to me?  Can you tell me something out loud?  Look at this lady over here, she's taking all this down, okay?  So you have to talk to us.  Can you do that, can you talk to me?

THE WITNESS:  (Nods head.)

37

> THE COURT:  She's friendly.  Okay.  Do you know why we're here today?  We're going to ask you some questions.
>
> THE WITNESS:  No.
>
> ...
>
> THE COURT:  Okay.  What we're doing here today, I just want to tell you we're going to ask you some questions and I just want to make sure you understand that telling the truth and maybe telling a fib or telling a lie.  You know the difference?  When you tell the – when you tell a bad thing, when you tell a lie, has anyone ever told you about that?  Do you get in trouble when you don't tell the truth?
>
> THE WITNESS:  (Nods head.)
>
> THE COURT:  You get in trouble, huh?
>
> THE WITNESS:  Yes.
>
> THE COURT:  What happens?  Does grandma get mad at you?
>
> THE WITNESS:  Yes.
>
> THE COURT:  You get a spanking maybe sometimes?
>
> THE WITNESS:  (Shakes head.)
>
> THE COURT:  No?  I used to get a spanking all the time.  I – okay?  But you know we're here to tell the truth and tell – after they ask you some questions, okay?
>
> THE WITNESS:  (Nods head.)

3 R.R. 47-51.  He also claims that the judge acted improperly by leaving the bench to better see the witness's gestures during her examination by counsel.  See id. at 64-65.

In order for bias to be proven, it must be shown that the cumulative effect of the judge's questions was substantial and prejudiced defendant's case.  Saenz, 134 F.3d at 702 (citations omitted).  The judge's questioning of the witness to

determine whether she knew the difference between the truth and a lie and to determine whether she was competent to testify did not prejudice petitioner's case to the point he was denied a fair trial.  A review of the record as a whole reveals that the judge did not exhibit "prosecutorial zeal" in his questioning of the witness.  See United States v. Zepeda-Santana, 569 F.2d 1386, 1389 (5th Cir. 1978) ("It is within the trial court's discretion to question witnesses as long as he remains impartial and does not exhibit prosecutorial zeal.").  Indeed, the state trial judge specifically warned the prosecutor to refrain from asking the child improper, leading questions.  3 R.R. 58-59.

The judge leaving the bench to better see the witness's gestures during direct examination does not quantitatively or qualitatively amount to a substantial intervention in court proceedings that would have confused the jury about the difference between the judge and the prosecutor.  He did not question the witness, but rather, left his usual seat in order to see the witness testify.

It is respectfully recommended that petitioner's claim that the judge's questioning of the child to determine competency and leaving of the bench to witness the child's gestures resulted in the appearance that he "acted as part of the prosecution" is without merit.

39

**E.     Petitioner's Claims that Prosecutor Entered Perjured Testimony.**

Petitioner claims that CPS worker Teresa Garcia gave perjured testimony at his trial, and that the state knowingly introduced such perjured testimony.  (D.E. 1, at 7-8, 10).  He also claims that the grandparents gave perjured testimony, and that the victim was manipulated into giving false testimony against him.  Id.

**1.     Standard of Review for Allegation of Perjured Testimony.**

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'"  Giglio v. United States, 405 U.S. 150, 153 (1972) (quoting Mooney v. Holohan, 294 U.S. 103, 112 (1935)).  "A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected."  Faulder v. Johnson, 81 F.3d 515, 519 (citing Giglio; Napue v. Illinois, 360 U.S. 264 (1959)).  In order to obtain relief for the introduction of perjured testimony, petitioner must show that: (1) the testimony was false; (2) the state knew the testimony was false; and (3) the testimony was material.  Id. (citing Kirkpatrick v. Whitley, 992 F.3d 491, 497 (5th Cir. 1993)).  "A new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury....'"  Giglio, 405 U.S. at 154 (quoting Napue, 360 U.S. at 271).

## 2.    Petitioner Fails to Establish Perjured Testimony Claim.

First, petitioner has completely failed to state what testimony that was entered through Teresa Garcia that he believes is false.  He has stated only a conclusory allegation that the prosecution knowingly introduced perjured testimony.  (D.E. 1, at 7).  On review of his state habeas claims, the Texas Court of Criminal Appeals affirmed of the trial court's adoption of facts.  Ex parte Buentello, App. No. 63,897-01, at cover.  The state court found that the assistant district attorney did not believe Ms. Garcia lied during her testimony, and that she did not knowingly introduce perjured testimony.  Id., State's Answer, Ex. D. Petitioner has failed to present any facts which might overcome the presumption of correctness to which the state court's factual findings are entitled.  Without a specific allegation of what testimony presented by Ms. Garcia was false, this Court cannot determine whether the testimony was, in fact, false, and therefore cannot determine whether it affected the judgment of the jury.  Therefore, it is respectfully recommended that petitioner has failed to establish a claim for habeas relief regarding Ms. Garcia's testimony.

Second, petitioner claims that the grandparents' testimony was false, and that they manipulated A.M. into giving false testimony against him.  (D.E. 1, at 10).  He asserts that they had motive to lie because of government benefits.  Id.

41

However, he has failed to allege any facts which might prove that the testimony of the grandparents and A.M. was false.  His counsel cross-examined each at trial, and had the opportunity to impeach each witness.  Moreover, petitioner has not presented any facts which indicate that the prosecution knowingly introduced false testimony.  It is respectfully recommended that petitioner has failed to state a claim for habeas relief regarding the testimony of the grandparents and A.M.

**F.     Petitioner's Claims of Ineffective Assistance of Counsel.**

Petitioner claims that both his trial and appellate counsel delivered ineffective assistance.  (D.E. 1, at 7-8, 10).  Specifically, he alleges that his trial counsel failed to subpoena a key witness who would have presented exculpatory testimony, failed to object to the admission of hearsay testimony, failed to properly request a preliminary hearing, failed to present mental health records, and failed to properly investigate his case and interview witnesses.  Id.  He further claims that his appellate counsel submitted an unauthorized brief on his behalf and provided ineffective assistance by not raising the claims that he raises in this habeas petition. Id. at 8.

**1.     Standard of Review Pursuant to Strickland v. Washington.**

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's

42

performance was deficient, and (2) that the deficient performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not

43

to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations omitted).  However, a reviewing court need not consider the deficiency prong if it concludes that petitioner has failed to show actual prejudice.  Strickland, 466 U.S. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

Under the second prong of the Strickland two-part test, petitioner may not simply allege, but must affirmatively prove actual prejudice, resulting from the ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's actions deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test.  See Carter v.

44

Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on

petitioner in a federal habeas proceeding). He must establish "actual prejudice as a

result of his counsel's ineffectiveness." Moody v. Johnson, 139 F.3d 477, 482 (5th

Cir. 1998) (citations omitted). As the Fifth Circuit has firmly established,

conclusory allegations of ineffective assistance of counsel do not raise a

constitutional issue. Miller, 200 F.3d at 281-86. It has further held that "[i]n the

absence of a specific showing of how these alleged errors and omissions were

constitutionally deficient, and how they prejudiced [petitioner], ... we [can find] no

merit to these [claims]." Id. at 282 (quoting Barnard v. Collins, 958 F.2d 634, 642

(5th Cir. 1992)).

> **2.    Petitioner's Claim of Ineffective Assistance of Trial Counsel.**
>
> > **a.    Counsel's Failure to Subpoena Dr. Kittay.**

First, petitioner claims that his trial counsel was ineffective because he failed

to subpoena Dr. Kittay, a court-appointed psychologist, to testify on his behalf.

(D.E. 1, at 10). He claims that after watching the videotaped interview of A.M.,

Dr. Kittay told him that the "alleged victim was led into making statements." Id.

He states that his counsel deliberately excluded Dr. Kittay's favorable testimony.

Id. However, his trial counsel determined that "it became apparent that Dr.

Kittay's testimony would be detrimental to Mr. Buentello, and that it was

45

questionable whether I could get Dr. Kittay's opinion regarding Ms. Bush into evidence." Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. B.

Not only should this Court defer to counsel's tactical decisions, but in the absence of clear and convincing evidence to the contrary, it must also defer to the State court's factual findings that defense counsel's assertions are true. Petitioner has presented nothing more than a conclusory allegation that counsel provided ineffective assistance, and has failed to present any facts to overcome the presumption of correctness to which the state court's factual findings are entitled.

Defense counsel's decision not to subpoena Dr. Kittay, for fear of harming his client, was a strategic choice within his discretion. See Strickland, 466 U.S. at 690. Petitioner has not demonstrated how this decision led to actual prejudice, or shown how the proceedings would have resulted in a different conclusion if Dr. Kittay had testified. See id. at 694. As the Fifth Circuit explained, "'[c]omplaints about uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Coble v. Dretke, 444 F.3d 345, 350 (5th Cir. 2006) (citations omitted). The Fifth Circuit has stated that "'[h]ypothetical or theoretical' testimony will not justify the issuance of a writ...." Martin v. McCotter, 796 F.2d 813, 819 (5th Cir. 1986).

Petitioner has not presented any evidence that Dr. Kittay could have offered admissible trial testimony regarding the videotape.  In short, he has failed to affirmatively show how the actions of his attorney deprived him of a fair trial.  <u>See</u> <u>Czere</u>, 833 F.2d at 64.  Specifically, he has failed to show that but for his counsel's failure, Dr. Kittay would have given admissible testimony that the videotaped interview was coerced.

Petitioner has not shown that his counsel's failure to call Dr. Kittay as a witness was unreasonable, or that actual prejudice resulted from his counsel's actions.  He has failed to show by clear and convincing evidence that the state court erred in its finding that his defense counsel's strategic decisions were reasonable and did not result in prejudice.  It is respectfully recommended that petitioner's claim that counsel provided ineffective assistance by failing to call Dr. Kittay as a witness is without merit.

### b.     Counsel's Failure to Object to Hearsay Testimony.

Second, petitioner claims that he received ineffective assistance of counsel at trial because his attorney failed to object to the introduction of inadmissible hearsay testimony.  (D.E. 1, at 10).  He claims that his counsel should have objected to the testimony by the grandparents, Ms. Bush, and Ms. Garcia.  <u>Id.</u> Regarding petitioner's allegations in his state habeas application, his defense

counsel stated:

> I believe I objected to all inadmissible testimony and
> evidence in this case.  There may have been instances
> where I allowed in otherwise inadmissible evidence,
> because it did not prejudice Mr. Buentello's case, and I
> did not want to call the evidence to the jury's attention.
>  ...
> Mr. Buentello complains I failed to request a hearing on
> the admissibility of the testimony of [the grandparents],
> who were "key witnesses" in the alleged offenses.  Mr.
> Buentello points out they were outcry witnesses, and the
> State elicited their testimony for this purpose.  Outcry
> witness testimony is admissible under the rules, and I had
> no legal basis for challenging the admissibility of their
> testimony.  I was able to discredit their testimony through
> impeachment at trial.
> ...
> [H]e complains I failed to raise the issue of perjury by
> Teresa R. Garcia pertaining to the issue of removal of the
> children from Mr. Buentello and their mother.
> ...
> Without Mr. Buentello being more specific about what he
> claims she lied about, I cannot meaningfully respond to
> this claim.  Nevertheless, I am aware of no perjury on her
> part.

Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. B.  Pursuant to the

Texas Family Code, hearsay testimony is admissible as an exception to the hearsay

rule for the first report of sexual abuse that a child makes to an adult.  Tex. Fam.

Code Ann. § 54.031 (Vernon 2002).  Moreover, petitioner did not raise this

particular claim in his state habeas petition.

Respondent notes that petitioner's claims regarding ineffective assistance of

48

trial counsel due to his defense counsel's failure to object to hearsay testimony from the grandfather, Ms. Bush, and Ms. Garcia are procedurally barred because petitioner could not return to the state forum to pursue these claims.  (D.E. 17, at 11).  Regardless of whether petitioner phrased his state habeas claims regarding inadmissible hearsay testimony in the same manner as he has in his instant petition, the state court adopted the assertions in the State's answer, and defense counsel's statements about the testimony were accepted as true.  Petitioner has failed to present anything more than a conclusory allegation that his counsel should have objected to the entry of the testimony.

This Court should defer to counsel's strategic choice not to object to hearsay testimony that was admissible, or that was inadmissible but immaterial to petitioner's case.  See Yohey, 985 F.2d at 228.  Petitioner has not shown that his counsel's failure to object to testimony that is admissible under Texas law was unreasonable.  Furthermore, as the Texas Court of Criminal Appeals rejected petitioner's claims in his state habeas petition that inadmissible hearsay was admitted at trial, he cannot now complain that actual prejudice resulted from the admission of the testimony.  See Vega v. Johnson, 149 F.3d 354, 362 (5th Cir. 1998) (finding by Texas Court of Criminal Appeals that an issue was without merit demonstrates that "counsel could hardly have committed an egregious error").  It is

49

respectfully recommended that defense counsel provided effective assistance and

petitioner's claim that his trial counsel failed to object to inadmissible hearsay is

without merit.

### c.    Counsel's Failure to Request Preliminary Hearing.

Third, petitioner claims that his trial counsel should have requested a hearing

regarding the grandparents' testimony.  (D.E. 1, at 10).  The state court adopted the

assertions in the state's answer to petitioner's state application for habeas corpus.

Ex parte Buentello, App. No. 63,897-01, at 127.  Regarding the state claim,

petitioner's counsel stated:

> I spent a considerable amount of time cross-examining
> [the grandmother].  [The grandfather's] testimony was
> not particularly effective for the State's case, and
> consequently, I did not see the need to spend a great deal
> of time cross-examining him.
> ...
> Witnesses are impeached at trial, not at a separate
> hearing.
> ...
> I cross-examined [the grandmother] regarding her
> statements, and also some collateral issues effecting [sic]
> her credibility.

Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. B.  Petitioner's

counsel did cross-examine both grandparents.  Furthermore, defense counsel

believed that the grandfather's testimony likely did not harm petitioner.  3 R.R. 26-

46.  Petitioner has not presented clear and convincing evidence that counsel's

failure to request a preliminary hearing to impeach the grandparents was

unreasonable or caused actual prejudice.  He has not shown by clear and

convincing evidence that his counsel erred in his handling of the witnesses, much

less that counsel's unprofessional errors denied him a fair trial.  See Strickland,

466 U.S. at 694.

It is respectfully recommended that counsel's failure to request a preliminary

hearing regarding the grandparents' testimony does not raise a constitutional issue

upon which habeas relief may be granted.

### d.    Counsel's Failure to Introduce MHMR Records.

Fourth, petitioner complains that his counsel failed to introduce MHMR

("Mental Health Mental Retardation") records.  Regarding the state habeas claim

on this matter, his counsel stated:

> I do not recall there being any mental health or mental
> retardation records.  And, further, there were never any
> discussions with Mr. Buentello regarding his mental
> health nor did Mr. Buentello ever advised [sic] me of any
> such issues or records, or give me any reason through his
> behavior or mental acuity to think that might be an issue
> concerning his mental health or mental retardation.

Ex parte Buentello, App. No. 63,897-01, State's Answer, Ex. B.  No MHMR

records have been presented to this Court with petitioner's state court records.

Prior to trial, a psychologist examined petitioner per court order.  C.R. at 132.  He

underwent the evaluation because an attorney who represented him before his trial

counsel believed he needed the evaluation because of threatening statements he

made to that prior attorney and to a prosecutor.  Id. at 137.  During the evaluation,

it was noted that:

> He does not feel he has any mental problems.  He has
> never been in treatment for any mental difficulties.  He
> has never been on any psychiatric medications....  He
> denies he has ever been in a psychiatric hospital.  This is
> the very first time he has ever been seen by anyone in the
> mental health field....  The defendant's mental status does
> not suggest any severe psychotic illness or confusion....
> Therefore, he is competent to stand trial.

Id. at 137-39 (emphasis added).  Petitioner has failed to state anything more than a

conclusory allegation that MHMR records were available to counsel.  He has not

presented clear and convincing evidence that he has suffered from mental illness or

that MHMR records were available to counsel, beyond the single evaluation he

underwent in preparation for trial.  The state court adopted the assertions of his

counsel that such records were not available.  Ex parte Buentello, App. No. 63,897-

01, at 127.  This finding is entitled to a presumption of correctness, and petitioner

has not presented clear and convincing evidence to overcome this presumption.

Furthermore, because he has not shown MHMR records were available, petitioner

has not shown that his trial counsel's actions were unreasonable or resulted in

actual prejudice.

52

It is respectfully recommended that petitioner has failed to present a constitutional issue resulting from his counsel's failure to introduce MHMR records, and therefore has failed to state a claim for habeas relief.

### e. Counsel's Failure to Investigate Petitioner's Case.

Finally, petitioner claims that his trial counsel was ineffective because he did not investigate his case. (D.E. 1, at 10). He alleges that his counsel did not "interview adverse witnesses to prepare impeachment evidence." Id. He also asserts that his counsel failed to interview any potential witnesses in support of his defense. Id. He claims that the grandmother made prior inconsistent statements to police that he should have investigated, but does not elaborate on what statements were made, or when the alleged statements were made. He states that his counsel "[f]ailed to examine and inspect all records in possession of the state to prepare a defense." Id.

Petitioner raised the above claims in his application for state habeas relief. Ex parte Buentello, App. No. 63,897-01, at 2-31. In an affidavit given in response to petitioner's state habeas claims, his counsel stated:

> My legal assistant and I reviewed all pertinent documents, talked to Mr. Buentello's prior lawyers, engaged private investigators to find witnesses, talked to witnesses and potential witnesses, and spent a great deal of time talking to Mr. Buentello.... I interviewed several witnesses for trial and so did the private investigators.

53

> My legal assistant also interviewed several witnesses....  I
> cross-examined [the grandmother] about her inconsistent
> statements, and I impeached her at trial with evidence
> that affected her credibility....  I reviewed every
> document which the district attorney's office made
> available to me and to his prior attorneys.

Ex parte Buentello, 01-CR-3008C(1), State's Answer, Ex. B.  The state habeas
court found that petitioner's counsel's affidavit was credible and the facts asserted
in it were true, and that his application was without merit.  Ex parte Buentello,
App. No. 63,897-01, at 127.  The Texas Court of Criminal Appeals adopted this
finding.  Id., at cover.

Petitioner also complains that counsel failed to prepare impeachment
evidence against the grandmother, who gave a prior inconsistent statement in a
police report.  (D.E. 1, at 10).  His attorney, however, did in fact cross-examine her
regarding the police report.  3 R.R. 26.

Petitioner has merely provided the Court with conclusory allegations that his
counsel failed to investigate his case, failed to interview witnesses, and failed to
review documents.  Such conclusory allegations cannot support a claim for habeas
relief.  See Miller, 200 F.3d at 286.  It is respectfully recommended that
petitioner's conclusory allegations that counsel failed to investigate his case and
interview witnesses do not give rise to a claim for habeas relief, and do not
overcome the presumption of correctness to which the state court's findings are

54

entitled.

Petitioner has failed to overcome the presumption of correctness to which the State court's findings are entitled with clear and convincing evidence.  He has failed to demonstrate that the state courts' determination of his claims was contrary to or an unreasonable application of clearly established Supreme Court precedent, or resulted in actual prejudice.  Therefore, it is respectfully recommended that petitioner's claims that he received ineffective assistance of trial counsel because counsel failed to adequately investigate his case, failed to interview adverse witnesses, and failed to interview defense witnesses are without merit.

### 3.  Petitioner's Claim of Ineffective Assistance of Appellate Counsel.

Petitioner claims that he did not consent to the appointment of his appellate counsel and that she did not have the authority to submit the appellate brief that she submitted on his behalf.  (D.E. 1, at 8).  He asserts that she should have raised the issues that he is raising in this habeas petition in his direct appeal.  Id.  In addition, he argues that he received ineffective assistance of counsel because his appellate counsel did not raise any point of error that resulted in his conviction being overturned.  Id.

The Supreme Court has established that "the proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective ... is that enunciated in

Strickland." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000) (citing <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986)).  Therefore, petitioner must show that his counsel's performance was deficient, and that such deficiency resulted in actual prejudice. <u>Strickland</u>, 466 U.S. at 687.  In addition, he must overcome the presumption of correctness to which the state court's findings are entitled.  <u>See Schaetzle v. Cockrell</u>, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under <u>Strickland</u>], but whether the state court's decision - that [the petitioner] did *not* make the <u>Strickland</u> showing - was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (<u>Strickland</u>), for succeeding on his IAC claim.").

Appellate "[c]ounsel need not raise every nonfrivolous ground of appeal, but should instead present '[s]olid, meritorious arguments based on directly controlling precedent.'" <u>Id.</u> at 445 (quoting <u>United States v. Williamson</u>, 183 F.3d 458, 463 (5th Cir. 1999)).  Petitioner's appellate counsel stated that she "presented the only two points of error" that she "believed had any merit and were most likely to overturn the verdict."  <u>Ex parte Buentello</u>, App. No. 63,897-01, State's Answer, Ex. F.  The state court adopted this assertion, and the Texas Court of Criminal Appeals denied petitioner's application and adopted the trial court's findings.  <u>Id.</u>

56

at 127, at cover.  Petitioner has failed to show that the state court's decision was an

unreasonable application of the Strickland test.  Furthermore, he has not

demonstrated actual prejudice.  The Texas Court of Criminal Appeals denied his

state habeas claims, which are the same claims that he argues should have been

asserted in his appellate brief.  Id., at cover; (D.E. 1, at 8).  Therefore, petitioner

cannot show that any prejudice resulted from her failure to argue the points that he

raises in his habeas petition.  See Vega, 149 F.3d at 362.

It is respectfully recommended that petitioner's claim that he received

ineffective assistance by his appellate counsel is without merit.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a

habeas corpus proceeding "unless a circuit justice or judge issues a certificate of

appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a

notice of appeal, it is respectfully recommended that this Court nonetheless address

whether he would be entitled to a certificate of appealability.  See Alexander v.

Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on

a certificate of appealability because "the district court that denies a petitioner

relief is in the best position to determine whether the petitioner has made a

substantial showing of a denial of a constitutional right on the issues before that

court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483).

As to claims that a district court rejects solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

In this case, it is respectfully recommended that reasonable jurists could debate the denial of the first ground of petitioner's § 2254 petition - whether the trial court improperly admitted hearsay testimony through an outcry witness. Although the Fifth Circuit has suggested that such testimony is permissible, see Story, 920 F.2d at 1255, it has yet to rule on facts specific to petitioner's conviction. Indeed, the constitutionality of testimony admitted pursuant to the Texas outcry statute has not been addressed by the Fifth Circuit.

As for all other grounds of petitioner's § 2254 petition, it is respectfully recommended that reasonable jurists could not debate the denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484).

Accordingly, it is respectfully recommended that the Court find that petitioner is entitled to a certificate of appealability only for the first ground of his petition concerning the Texas outcry statute, and is not entitled to a certificate of appealability for the remaining grounds of his petition.

## VIII. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's motion for summary judgment be granted because petitioner fails to state a claim upon which habeas relief may be granted. It is further recommended that the Court

find that petitioner is entitled to a certificate of appealability only for his first claim

regarding outcry witness testimony, and is not entitled to a certificate of

appealability for any remaining claims.

Respectfully submitted this 4th day of December 2006.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 8(b) of the Rules Governing § 2254 Cases; Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).